UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| KELVIN LOVETT, | Case No. 2:24-cv-4081 |
| Plaintiff, | |
| vs. | Judge James L. Graham |
| | Chief Magistrate Judge Stephanie Bowman |
| EVANS, *et al*., | |
| Defendants. | |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, an Ohio inmate who is proceeding without the assistance of counsel, brings this civil rights action pursuant to 42 U.S.C. § 1983. Because Plaintiff has paid the full filing fee, his motion to proceed *in forma pauperis* is **DENIED as moot**. (Doc. 6).

This matter is before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915 (e)(2)(B); § 805, 28 U.S.C. § 1915A(b). This matter is also before the Court on Plaintiff's motions for a preliminary injunction (Doc. 2) and for the appointment of counsel (Doc. 5).

For the reasons set forth below, the Undersigned **RECOMMENDS** that all of Plaintiff's claims be **DISMISSED** for failure to state a claim upon which relief may be granted. Plaintiff's separately tendered motions for a preliminary injunction (Doc. 2) and for the appointment of counsel (Doc. 5) are **DENIED**.

I. **Background**

Plaintiff is an Ohio inmate who currently resides at Trumbull Correctional Institution but was previously housed at Ross Correctional Institution (RCI).  Plaintiff brings this action against several employees of RCI in both their individual and official capacities, alleging violations of his constitutional rights.  Plaintiff primarily challenges the conditions of his confinement and the alleged "inhumane living conditions" he experienced while housed in segregation at RCI from approximately July 29, 2024, until August 7, 2024.  (Doc. 1, at PAGEID # 6, 9).  As Defendants, Plaintiff names Unit Manager Evans, Corrections Officers Scott and Buckler, Sergeant Mayes, Captain Yates, Lieutenant Williams, Case Manager Ware, Warden Cool, and Captain Crabtree, who all appear to have been employees of RCI at the times relevant to the claims brought against them.  (*Id*. at PAGEID # 4).  Plaintiff seeks money damages and declaratory relief.  (*Id*. at PAGEID # 29-30).

II. **Screening of the Amended Complaint**

A. **Legal Standard**

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable legal basis when the defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke,* 490 U.S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton v. Hernandez,* 504 U.S. 25, 33 (1992); *Lawler,* 898 F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or delusional" in

2

reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual

3

enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

### B. Allegations in the Complaint

Many of the allegations in the Complaint are conclusory in nature and lack a factual basis. Plaintiff alleges the named Defendants "have and continue to exhibit deliberate indifference, dereliction of duty, conspiracy to commit criminal acts, and cover up criminal acts." (Doc. 1 at PAGEID # 6). Plaintiff accuses Defendants of engaging in fraud, racketeering, corruption, retaliation and subjecting him to cruel and unusual punishment. (*Id.*)

Primarily, Plaintiff alleges he was subjected to inhumane living conditions in violation of the Eighth and Fourteenth Amendments while housed in segregation at RCI. (Doc. 1, at PAGEID # 6). To begin, Plaintiff alleges an unnamed corrections officer gave him a "nasty" mattress that "smelled of urine, sweat, and feet" with no protective cover. (*Id.* at PAGEID # 7). Plaintiff further alleges his cell window was "screwed shut" providing "zero access," the cell window and vents were covered in "[a] thick layer of dust, dirt, pollutants, molds and many other unknowns," and he was not given cleaning supplies. (*Id.* at PAGEID # 11). Plaintiff asserts these conditions caused him to suffer a sore throat, nasal congestion, and he "stumble[d] for words during light conversation." (*Id.* at PAGEID # 12). Plaintiff contends that other vents within the segregation unit (which he observed when walking to the shower) were covered with dust, dirt, pollen, and mold, and the air was "thick with the smell of burning paper, feces being thrown and cooked, and the OC spray (mace)." (*Id.* at PAGEID # 16-17). Plaintiff notes that a stainless steel stool and table were located next to his bed, and he speculates that if he had fallen out of bed "for an unknown medical emergency," he would have "sustain[ed] a real true serious injury." (*Id.* at PAGEID # 24). Finally, Plaintiff claims he was denied access to envelopes,

4

paper, soft backed books, address books, and his legal work while in segregation. (*Id*. at PAGEID # 21).

Plaintiff filed informal complaints concerning the living conditions within segregation. Without factual elaboration, Plaintiff claims that Defendant Evans ignored his complaints, combined them with other ICR's or turned them into kites, and attempted to cover up the conduct of other officers. (*Id*. at PAGEID # 27). Plaintiff concludes that the level of cruel and unusual punishment and corruption at RCI rivels "levels only seen in the mafia" and constitutes a racketeering enterprise. (*Id*. at PAGEID # 6).

### C. Analysis of the Complaint

*1. Official capacity claims for money damages*

As an initial matter, Plaintiff's claims against Defendants in their official capacities must be dismissed to the extent Plaintiff seeks monetary damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for recovery of money from the state. *Edelman,* 415 U.S. at 663; *Ford Motor Company v. Dept. of Treasury*, 323 U.S. 459, 464 (1945). And a suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan*

5

*Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.")). On this basis, the Undersigned finds that Defendants are immune from suit in their official capacities and hereby **RECOMMENDS** that all official-capacity claims for monetary damages be **DISMISSED**.

    2. *Claims regarding informal complaints and grievance procedures (claim F)*

Plaintiff's claim regarding the handling of his informal complaints should be dismissed. In claim F, Plaintiff alleges that he filed five different informal complaints and only two were answered by Defendant Evans. (Doc. 1, at PAGEID # 27). Plaintiff asserts that Defendant Evans combined certain informal complaints and converted others to kites. (*Id*.) Plaintiff accuses Defendant Evans and other unnamed individuals of playing "electrical musical chairs" to ignore, combine or transform his ICR's into kites in order to cover up the poor living conditions within the segregation unit and to "keep funds rolling in." (*Id*. at PAGEID # 28). However, Plaintiff fails to state a claim for relief under § 1983 where his only allegation is that his grievances were denied or mishandled.

"Prison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citations omitted). *See also Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (finding the "denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983"). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable

under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, Plaintiff cannot hold any Defendant liable simply for failing to correct the violations of others, at the grievance stage or otherwise. *See also Pounds v. Myers*, 76 F. App'x 630 (6th Cir. 2003) (finding defendant "could not be held liable merely on the basis that they failed to remedy a grievance").

To the extent Plaintiff also attempts to bring a separate civil conspiracy claim against Defendant Evans or others based on their handling of his informal complaints, Plaintiff's "vague and conclusory allegations of a conspiracy" are insufficient to state a claim for relief. *Anderson v. Cnty. Of Hamilton*, 780 F.Supp.2d 635, 652 (S.D. Ohio 2011). "An alleged 'conspiracy' to unfairly deny inmate grievances would not state a conspiracy to deny any constitutional right, since the 'mere denial of a prisoner's grievance states no claim of constitutional dimension.'" *Jeter v. Ahmed*, No. C-1-13-244, 2013 WL 6157991, *3 (Nov. 25, 2013) (citing *Alder v. Correctional Medical Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003)).

For the foregoing reasons, the Undersigned **RECOMMENDS** that claim F be **DISMISSED** for failure to state a claim upon which relief may be granted.

3. *Conditions of Confinement*

In claims A through C and claim E, Plaintiff alleges the conditions of his confinement during the ten days he spent in segregation at RCI violated the Eighth and Fourteenth Amendments.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[t]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and "[n]ot every unpleasant experience a prisoner might

7

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Instead, "extreme deprivations are required to make out a conditions-of-confinement claim . . . [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

An Eighth Amendment conditions of confinement claim includes both objective and subjective components. The objective component requires a plaintiff to show that the alleged harm was "objectively, sufficiently serious" and denied him "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations and citation omitted). Stated another way, a plaintiff must allege and prove facts that establish an objectively intolerable risk of serious harm. *Id*. at 842, 846 n.9. The subjective component requires proof that defendants acted with "deliberate indifference" to a substantial risk to an inmate's health or safety. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). That is, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This standard requires a state of mind that is "more blameworthy than negligence." *Id*. at 835.

Finally, conditions-of-confinement claims "are highly fact-specific" and "the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204 (6th Cir. 2017). Therefore, the Court should "consider the interrelationship between the severe conditions and their duration" when evaluating the merits of a conditions of confinement claim. *Francis v. Altiere*, 491 F. App'x 539, 543 (6th Cir. 2012).

8

The unsanitary conditions that Plaintiff describes are unpleasant. But the presence of some unsanitary conditions in a cell does not sufficiently state an Eighth Amendment claim unless the conditions or duration of exposure are extreme. And here, Plaintiff has not alleged a sufficient factual basis for this Court to plausibly infer that he could be entitled to relief.

### a. Unhygienic mattress (claim A)

In claim A, Plaintiff alleges that when placed in segregation, he told an unnamed corrections officer that he did not have a mattress, the officer then provided Plaintiff with a "nasty" mattress that "smelled of urine, sweat, and feet" and had no protective cover, and the officer informed Plaintiff that all the mattresses in segregation were in the same condition. (Doc. 1, at PAGEID # 7). Plaintiff concludes the condition of the mattress constitutes cruel and unusual punishment in violation of the Eighth Amendment. (*Id*.)

Claim A should be dismissed because Plaintiff has not alleged the existence of an objectively intolerable risk of serious harm in violation of the Eighth Amendment. Although Plaintiff characterizes the mattress as "dangerous", any temporary or minor discomforts resulting from unsanitary conditions are unlikely to meet the objective component of an Eighth Amendment claim. *See e.g.*, *Brown v. Mahlman*, No. 1:22-cv-239, 2022 WL 17817615, *3 (S.D. Ohio Dec. 19, 2022) (Marbley, D.J.) ("Courts have typically found that temporary exposure to feces does not meet the objective component of the Eighth Amendment conditions of confinement test"). Additionally, the Sixth Circuit has held that being completely deprived of any mattress for a 14-day period does not violate the Eighth Amendment. *Jones v. Toombs*, 77 F. 3d 482 (6th Cir. 1996). *See also Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment."). Here,

9

the Complaint lacks sufficient allegations to plausibly infer that the mattress conditions posed an objectively serious risk of harm under the Eighth Amendment, nor does Plaintiff allege any injury resulting from the unhygienic mattress.

Plaintiff also does not allege sufficient facts from which the Court could plausibly infer that any named Defendant was deliberately indifferent to an excessive risk to his health or safety posed by the mattress. In fact, Plaintiff does not allege that any named Defendant was personally aware of the condition of his mattress. Although Plaintiff alleges that Defendants Scott and Buckler routinely handle and pass out unhygienic mattresses (and create unhygienic conditions by tearing the protective covers during searches), Plaintiff does not allege that either Defendant was responsible for giving him the specific mattress he received or that they were responsible for the condition of that mattress. To the contrary, Plaintiff claims he received his mattress from an unidentified corrections officer who is not named as a defendant in the Complaint. Because the unnamed officer is not named as a defendant and is not a party to this case, the Court declines to analyze Plaintiff's statements with respect to this non-defendant. *See Wood v. Reynolds*, No. 3:22-cv-351, 2023 WL 5310094, at *6 (S.D. Ohio Aug. 17, 2023), *report and recommendation adopted*, No. 3:22-cv-351, 2024 WL 2060813 (S.D. Ohio May 8, 2024) (declining to analyze allegations against individuals discussed in the complaint but not named as defendants) (citing *Shipp v. CoreCivic*, No. 16-2891, 2018 WL 4265259, at *5 (W.D. Tenn. Sept. 6, 2018)).

Plaintiff generally asserts that Warden Cool and others "had to be aware" of the condition of the mattresses in segregation. Plaintiff alleges the Warden is "responsible for all functions within the prison," and that the Warden entered into the area of segregation on August 2, 2024, or August 3, 2024. (Doc. 1, at PAGEID # 8). Plaintiff asserts that Defendants Mayes, Evans, Ware, Williams, Yates and Crabtree all either have an office near segregation and/or routinely

walk through the area, and that each of these defendants has a "duty" to ensure inmate needs are addressed but they have "turned a blind eye." (*Id*. at PAGEID 9-11).

To the extent Plaintiff seeks to hold the Warden or any other defendant responsible based on their supervisory position in the prison, *respondeat superior* does not apply to § 1983 claims and may not serve as the basis for liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. Dep't of School Servs.*, 436 U.S. 658 (1978); *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992). "[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

Plaintiff also fails to allege sufficient personal action by the Warden or Defendants Scott, Buckler, Mayes, Evans, Ware, Williams, Yates and Crabtree. Section 1983 liability is premised on active unconstitutional behavior and not a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints." *King v. Aramark Correctional Services*, No. 2:23-cv-156, 2025 WL 81214, at *5 (S.D. Ohio Jan. 13, 2025), *report and recommendation adopted,* No. 23-cv-156, 2025 WL 815760 (S.D. Ohio Mar. 14, 2025) (citing *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for violations of plaintiff's rights)).

Here, Plaintiff has not attributed active unconstitutional behavior regarding his mattress condition to any of the named Defendants. Plaintiff does not allege that the Warden or any other Defendant personally observed the condition of his mattress, or had a role in the selection of his mattress. Although Plaintiff characterizes the Defendants as "lazy and liable" and the mattress

11

situation "likely purposeful," (Doc. 1, at PAGEID # 7), he has not asserted sufficient facts to plausibly infer that any Defendant acted with deliberate indifference to his health or safety. Therefore, the Undersigned **RECOMMENDS** that claim A be **DISMISSED** for failure to state a claim upon which relief can be granted.

### b. Presence of stainless steel table and stool (claim E)

In claim E, Plaintiff alleges that upon entering segregation, he "recognized a hazardous situation . . . whereby there [w]as a stainless steel table and a stainless steel stool right directly next to the bed." (Doc. 1, at PAGEID # 24). Plaintiff speculates that if he or any other inmate had fallen out of bed "for an unknown medical emergency," he would have "absolutely sustain[ed] a real true serious injury. This is cruel and unusual punishment." (*Id*.)

Plaintiff's allegations are insufficient to state an Eighth Amendment claim. Plaintiff was not injured by the stool or table, and Plaintiff's contention about the risk of future harm posed by the furniture is speculative and conclusory. Moreover, since the filing of this Complaint, Plaintiff has been transferred to another facility and any speculative or hypothetical threat of future injury has ended. The Undersigned **RECOMMENDS** that claim E be **DISMISSED.**

### c. Presence of dust, dirt, mold and pollutants (claims B and C)

In claims B and C, plaintiff alleges his cell window was screwed shut with no access, and the window, as well as the vents in segregation, were covered in a thick layer of dust, dirt, pollutants and molds which impeded proper air flow. (Doc. 1, at PAGEID # 11). Plaintiff states his cell was "overall filthy" and he was not offered cleaning supplies. (*Id*.) Plaintiff notes that he observed similar amounts of dirt, dust, pollutants and mold while walking to the shower and the air quality was poor.

Although it is possible that in severe cases exposure to mold and pollutants might be sufficiently serious to satisfy the objective requirement of an Eighth Amendment claim, simply alleging the presence of these issues is not enough.  Courts have looked to several factors to determine if the presence of mold constitutes a risk of serious harm, including whether the plaintiff suffered a physical injury, length and severity of the exposure, and whether the mold was airborne.  *See, e.g.*, *Henderson v. Parin*, No. 3:22-cv-228, 2023 WL 369954, at *3 (S.D. Ohio Jan. 24, 2023) (recommending dismissal "because plaintiffs have failed to allege that they suffered a physical injury that was caused by exposure to black mold"); *Rogers v. MacClaren*, No. 1:20-cv-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020) (dismissing claim where plaintiff "does not suggest that the mold is airborne, and he does not allege that the presence of mold caused him a health problem or created a substantial risk to his health").

Here, Plaintiff's allegations about the presence of dust, mold and pollutants do not demonstrate the existence of a sufficiently serious risk of harm to his health.  Plaintiff generally states he experienced allergy like symptoms and some difficulty with speech, but Plaintiff does not indicate the severity or duration of these symptoms.  Moreover, Plaintiff has not alleged the mold was toxic or airborne.  Regarding the mold he observed outside of his cell on the way to the showers, Plaintiff does not allege the frequency in which he encountered this area or how long he was exposed to this area during his short stay in segregation.

But even if Plaintiff's allegations of a congested nose, sore throat and possible speech disruption was sufficient to satisfy the objective standard at this early stage, Plaintiff still fails to state a claim for relief because Plaintiff does not allege any personal action or involvement suggesting the individual defendants were deliberately indifferent within the meaning of the Eighth Amendment.  That is, Plaintiff does not allege sufficient facts (beyond his own

13

conclusions) that any of the named defendants were actually aware of the mold and pollutants and then consciously disregarded a serious risk posed to Plaintiff. And Plaintiff does not allege that he made any personal complaints to the Warden or the other defendants about these issues, or informed them of his physical symptoms. Finally, although Plaintiff alleges he was not given cleaning supplies, Plaintiff does not allege he requested supplies.

For the foregoing reasons, the Undersigned **RECOMMENDS** that claims B and C be **DISMISSED** for failure to state a claim upon which relief can be granted.

 4. *Access to the courts (claim D)*

In claim D, Plaintiff alleges that during his "property pack-up", an unidentified corrections officer informed him that he could not have "envelopes, paper, soft backed books, or address books" and he "was also denied all legal work." (Doc. 1, at PAGEID # 21). Plaintiff claims this policy "[e]ffectively cut[] every inmate off from the world, family, friends, lawyers and the court system." (*Id.*) Plaintiff acknowledges that Unit Manager Evans informed him that "legal work on active open cases is permitted." (*Id.*) Plaintiff notes that he was drafting a letter to a law professor regarding reopening one of his court cases that he was unable to access. Plaintiff also argues that he is "allowed to start a legal action at any time." (*Id.* at 22).

The Undersigned construes claim D as an attempt to state a claim for denial of access to the courts. Under the First Amendment, prisoners have a fundamental right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court noted that in addition to law libraries or alternative sources of legal knowledge, states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. But an indigent prisoner's constitutional right to legal resources and materials is not without limit. In

order to state a viable claim for interference with access to the courts, a plaintiff must show "actual injury." *Lewis*, 518 U.S. at 349; *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). "In other words, an inmate who claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'" *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002). And, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). To that end, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff does not reference any connection between his lack of writing materials and a direct appeal, habeas corpus petition, or civil rights claim. Plaintiff only vaguely refers to a letter he was writing to a law professor about reopening his "case." (Doc. 1, at PAGEID # 22). Plaintiff also has not alleged any facts showing he suffered actual injury as a result of his stationary restriction while in segregation, such as showing he was (and is) unable to file court pleadings, missed court deadlines, or had a case dismissed in any nonfrivolous legal proceeding based on the denial of writing materials. Without an allegation of actual injury, the Complaint fails to state a claim for denial of access to the courts under the First Amendment. For these reasons, the Undersigned **RECOMMENDS** claim D be **DISMISSED**.

### III. Motion to Appoint Counsel

Regarding Plaintiff's request for the appointment of counsel, (Doc. 5), it is well settled that indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, appoint counsel in the Court's own discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989). But the appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the case without the help of counsel. *See Lavado*, 992 F.2d at 606.

The Court has carefully considered whether exceptional circumstances exist here and finds that the appointment of counsel is not warranted. Therefore, the Court **DENIES without prejudice** Plaintiff's motion to appoint counsel (Doc. 5).

### IV. Motion for Preliminary Injunction

At the time the Complaint was filed, Plaintiff separately filed a motion for a preliminary injunction seeking to be transferred to another institution. (Doc. 2). Plaintiff claims an injunction is necessary due to feared retaliation by Defendants. Specifically, Plaintiff states "I fear that once this lawsuit is filed and the defendants are served a massive target will be on my back." (*Id*. at PAGEID # 34).

The Court notes that Plaintiff was previously housed at RCI and that is where the events described in this Complaint occurred. Plaintiff has since been transferred to Trumbull Correctional Institution (TCI). (Doc. 8). The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive claims. *See Kensu v. Haigh*, 87 F.3d 172, 175

16

(6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained). Accordingly, Plaintiff's motion for a preliminary injunction (Doc. 2) is **DENIED**.

## IT IS THEREFORE RECOMMENDED THAT:

The Court **DISMISS** Plaintiff's Complaint for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B).

## IT IS THEREFORE ORDERED THAT:

Plaintiff's motion to proceed in forma pauperis is **DENIED as moot**. (Doc. 6). Plaintiff's motions for a preliminary injunction (Doc. 2) and for the appointment of counsel (Doc. 5) are **DENIED**.

## PROCEDURE ON OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

    **IT IS SO ORDERED.**

May 27, 2025                                            *s/Stephanie K. Bowman*
                                                       STEPHANIE K. BOWMAN
                                                       Chief United States Magistrate Judge